O

1
2
3
4
5
6
7 <span style="font-family:'Old English'">United States District Court</span>
8 <span style="font-family:'Old English'">Central District of California</span>
9

10   ADESOLA AIYEDUN,                          Case № 2:24-cv-04341-ODW (ASx)

11                  Plaintiff,

12                                             **ORDER DENYING PLAINTIFF'S**
                                               **MOTION FOR DEFAULT**
13        v.                                   **JUDGMENT [48]**

14   AUTOCRED, INC. et al.,

15                  Defendants.

16

17
                          **I.    INTRODUCTION**
18
         Plaintiff Adesola Aiyedun brings this action against Defendant Reign Recovery
19
   Services, Inc. ("RRS") for violation of the Federal Fair Debt Collection Practices Act
20
   ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act (the
21
   "Rosenthal Act").  (First Am. Compl. ("FAC"), Dkt. No. 12.)[1]  RRS failed to appear
22
   and defend, and Aiyedun now moves for default judgment.  (Mot. Default J. ("Motion"
23
   or "Mot."), Dkt. No. 48.)   For the reasons discussed below, the Court **DENIES**
24
   Aiyedun's Motion.[2]
25

26
   ------------------------------
27
   [1] On August 13, 2025, the Court dismissed Autocred, Inc. in light of Aiyedun and Autocred's Joint
   Stipulation for Dismissal.  (Dkt. No. 43.)  RRS remains as the sole defendant in this action.
28
   [2] After carefully considering the papers filed in support of the Motion, the Court deemed the matter
   appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND

Aiyedun purchased a 2007 Jaguar X-Type (the "Vehicle") from non-party Carfluent, Inc.  (FAC ¶ 10.)  Aiyedun executed a loan agreement (the "Contract") to facilitate the purchase, which provided Carfluent and its assignees a security interest in the Vehicle.  (*Id.* ¶¶ 11–12.)  Carfluent later assigned the Contract to Autocred, an automobile loan financing company and debt collector.  (*Id.* ¶¶ 6–7, 13.)  Autocred engaged RRS, a repossession agent, to repossess the Vehicle.  (*Id.* ¶ 18.)  In late October 2023, RRS repossessed the Vehicle, which was secured in a private gated parking structure.  (*Id.* ¶¶ 19–20.)  RRS did not have Aiyedun's consent to enter the structure.  (*Id.* ¶¶ 21–23.)

On May 24, 2024, Aiyedun brought this action against Autocred and RRS. (Compl., Dkt. No. 1.)  On June 11, 2024, Aiyedun amended her complaint. (FAC.)  On March 3, 2025, Aiyedun served RRS with the First Amended Complaint.  (Proof Service FAC, Dkt. No. 45.)  RRS failed to appear or defend the case.  Accordingly, upon Aiyedun's request, on April 2, 2025, the Clerk entered RRS's default. (Default, Dkt. No. 47.)

On July 22, 2025, Aiyedun filed this Motion against RRS.  (Mot.)  Aiyedun requests relief of $2,000.00 in statutory damages, $14,396.00 in attorneys' fees, and $711.22 in costs.  (*Id*. at 16–22.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a).  However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2.  Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc.*, *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)).  Instead, "[t]he

1    district court's decision whether to enter a default judgment is a discretionary one."

2    *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (collecting cases).

3        Generally, after the Clerk enters a default, the defendant's liability is conclusively

4    established, and the well-pleaded factual allegations in the plaintiff's complaint "will

5    be taken as true," except those pertaining to the amount of damages. *TeleVideo Sys.,*

6    *Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes*

7    *v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).   The court need not make

8    detailed findings of fact when entering default judgment, except as to damages. *See*

9    *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

10                           **IV.    DISCUSSION**

11        Aiyedun moves for entry of default judgment against RRS totaling $17,107.22.

12    (Mot. 16–22.)   The Court will first address whether Aiyedun satisfies the procedural

13    requirements for default judgment.   The Court will then determine whether the *Eitel*

14    factors weigh in favor of default judgment.

15    **A.    Procedural Requirements**

16        Local Rule 55-1 requires that the movant establish: (1) when and against which

17    party default was entered; (2) the pleading on which default was entered; (3) whether

18    the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil

19    Relief Act does not apply; and (5) that the defaulting party was properly served with

20    notice, if required under Rule 55(b)(2).   In turn, Rule 55(b)(2) requires written notice

21    on the defaulting party if that party "has appeared personally or by a representative."

22        Aiyedun satisfies the procedural requirements necessary for obtaining a default

23    judgment.   On April 2, 2025, the Clerk entered default against RRS as to Aiyedun's

24    First Amended Complaint.   (*See* Default.)   Aiyedun's counsel submits declaration

25    testimony that RRS is not a minor or incompetent person and that the Servicemembers

26    Civil Relief Act does not apply.  (Decl. Russell S. Thompson, IV ISO Mot. ¶¶ 5–6, Dkt.

27    No. 48-2.)  Finally, service of the Motion is not required because RRS has not appeared.

28

1    Fed. R. Civ. P. 55(b)(2) (requiring written notice only when the defaulting party has
2    appeared).

3        Thus, Aiyedun satisfies the procedural requirements for entry of default
4    judgment.

5    **B.    *Eitel* Factors**

6        In considering whether entry of default judgment is warranted, courts consider
7    the "*Eitel* factors": "(1) the possibility of prejudice to the plaintiff"; "(2) the merits of
8    plaintiff's substantive claim"; "(3) the sufficiency of the complaint"; "(4) the sum of
9    money at stake"; (5) the possibility of a material factual dispute; "(6) whether the
10   default was due to excusable neglect"; and (7) the strong policy favoring decisions on
11   the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "Of all the *Eitel*
12   factors, courts often consider the second and third factors to be the most important."
13   *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal.
14   2019) (internal quotation marks omitted).  Thus, the Court considers these factors first.

15       *1.    Second & Third* Eitel *Factors*

16       The second and third *Eitel* factors require a plaintiff to "state a claim on which
17   the [plaintiff] may recover."  *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original).
18   Although well-pleaded allegations are taken as true, "claims which are legally
19   insufficient[] are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d
20   1261, 1267 (9th Cir. 1992).

21       Aiyedun asserts three claims against RRS, for violation of the FDCPA and the
22   Rosenthal Act.  (FAC ¶¶ 24–31, 41–52.)  The Court examines each in turn.

23           a.    Count I—FDCPA

24       The FDCPA prohibits enforcers of security interests from "[t]aking or
25   threatening to take any nonjudicial action to effect dispossession . . . of property if . . .
26   there is no present right to possession of the property claimed as collateral through an
27   enforceable security interest."  15 U.S.C. § 1692f(6)(A).  Courts look to state law
28   regarding security interests to determine whether a secured party had a present right to

possess the collateral.  *Rivin v. Patrick K. Willis Co., Inc.*, No. 2:20-cv-07431-RGK (KSx), 2020 WL 8365251, at *4 (C.D. Cal. Dec. 4, 2020).  A secured party may take possession of a collateral "[w]ithout judicial process, if it proceeds without breach of the peace."  Cal. Com. Code § 9609(b)(2).  However, "a breach of the peace can extinguish a present right to possession." *Clark v. PAR, Inc.*, No. 2:15-cv-02322-MWF (FFMx), 2015 WL 13781846, at *6 (C.D. Cal. July 22, 2015).

California statutes do not define "breach of the peace" and left that up for interpretation by state courts.  *See* Cal. Com. Code § 9609 cmt. 3 ("[T]his section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts.")  Although California law bars repossession companies from "[u]nlawfully entering any private building or secured area without the consent of the owner," Cal. Bus. & Prof. Code § 7508.2(d), California courts have interpreted breach of the peace to occur only where "force or threats of force are necessary to secure possession of the collateral without judicial intervention," *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 600 (1979).  Thus, to plausibly allege breach of the peace, a plaintiff cannot simply allege that the repossession company entered the property without consent; rather, a plaintiff must also allege facts showing use of force or threat of force.  *See Brooks v. Leon's Quality Adjusters, Inc*, No. 1:15-cv-000965-JLT, 2016 WL 4539967, at *14 (E.D. Cal. Aug. 30, 2016) ("Notably, Plaintiff has identified no cases—and the Court has located none—where the mere entry upon the property of a third party constitutes a breach of the peace under California law."); *see also Van Dorn v. Couch*, 21 Cal. App. 2d Supp. 749, 755 (1937) ("[I]t is generally held that the owner of personal property . . . may go upon that land to retake it without committing a trespass if he can do so without committing . . . breach of the peace.").

Here, Aiyedun alleges only that RRS, without Aiyedun's consent, repossessed the Vehicle by entering a "secured private gated parking structure."  (FAC ¶¶ 20–23.)  This allegation alone, even accepted as true, does not suggest a breach of the peace, and

1  therefore fails to "raise [the] right to relief above the speculative level." *Bell Atl. Corp.*

2  *v. Twombly*, 550 U.S. 544, 555 (2007). Aiyedun does not allege that (1) RRS used or

3  threatened to use any force to enter the structure, (2) RRS entered a structure secured

4  by a locked gate, or (3) RRS broke or neutralized any locks to enter the property. (*See*

5  FAC ¶ 20 (referring to a "secured" and "private gated parking structure" but failing to

6  mention any locks or force).) These are the type of allegations that courts require to

7  establish a breach of the peace. *See, e.g.*, *Rivin*, 2020 WL 8365251, at *4 (finding the

8  plaintiff sufficiently pleaded a claim under 15 U.S.C. § 1692f(6) by alleging defendants

9  breached the peace when they entered his property, "secured by a locked gate and fence,

10  without permission").

11  Thus, Aiyedun has not pleaded a sufficiently meritorious claim for violation of

12  the FDCPA, and therefore the second and third *Eitel* factors favor denial of entry of

13  default judgment on Aiyedun's first cause of action.

14  b.    Counts III & IV—Rosenthal Act

15  The Rosenthal Act is California's adopted version of the FDCPA. *Warner v.*

16  *Midland Credit Mgmt., Inc.*, 540 F. Supp. 3d 946, 968 (C.D. Cal. 2021). In her third

17  and fourth causes of action, Aiyedun alleges violations of two separate provisions of

18  the Rosenthal Act: section 1788.10(a) and section 1788.17, respectively. (FAC ¶¶ 41–

19  52.)

20  Section 1788.10(a) of the Rosenthal Act prohibits a debt collector from collecting

21  a covered debt by "[t]he use, or threat of use, of physical force or violence or any

22  criminal means to cause harm to . . . the property of any person." Aiyedun argues that

23  RRS's entrance of a secured area without the owner's consent constituted a criminal act

24  to harm the Vehicle. (Mot. 11.) In so arguing, Aiyedun relies on the same arguments

25  she advanced for RSS's alleged violation of the FDCPA. (*Id.*) But as the Court

26  explained above, Aiyedun has not pleaded sufficient facts to establish physical force or

27  threat of physical force—let alone a criminal act. As Aiyedun fails to advance an

28  argument regarding RRS's liability under this section 1788.10 that is untethered from

6

1    her FDCPA argument, the Court finds that Aiyedun has not met her burden of pleading

2    a sufficiently meritorious claim under section 1788.10 of the Rosenthal Act.  Therefore,

3    the second and third *Eitel* factors favor denial of entry of default judgment on Aiyedun's

4    third cause of action.

5         Section 1788.17 of the Rosenthal Act requires compliance with the provisions of

6    the FDCPA.  Aiyedun correctly argues that a violation of the FDCPA is a per se

7    violation of the Rosenthal Act, so by establishing her FDCPA claim, she may also

8    establish her claim under the Rosenthal Act.  (Mot. 10.)  But as explained above,

9    Aiyedun does not establish her FDCPA claim.  Consequently, Aiyedun also does not

10   establish her claim under the Rosenthal Act.  Thus, the second and third *Eitel* factors

11   favor denial of entry of default judgment on Aiyedun's fourth cause of action.

12        Aiyedun's failure to state a claim for relief for any of her causes of action dooms

13   her Motion.  *Atl. Specialty Ins. Co. v. Top Sealand Int'l Co.*, No. 2:22-cv-04468-MCS

14   (GJSx), 2022 WL 19770292, at \*2 (C.D. Cal. Dec. 9, 2022) ("Because Plaintiff does

15   not meet the threshold requirement of an adequately pleaded complaint, [she] is not

16   entitled to default judgment.").  Accordingly, the Court declines to address the

17   remaining *Eitel* factors and **DENIES** Aiyedun's Motion.  *See GS Holistic, LLC v.*

18   *Ravens Smoke Shop, Inc.*, No. 2:22-cv-07199-MWF (Ex), 2023 WL 5504964, at \*3

19   (C.D. Cal. July 10, 2023) ("Because the decision to grant default judgment is at the sole

20   discretion of the Court, the Court may render judgment based on an assessment of the

21   second and third *Eitel* factors alone.").  However, the Court also finds that these

22   deficiencies may be cured and grants Aiyedun leave to amend her pleading.  *See id.*

23   (granting leave to amend pleadings after denying motion for default judgment).

### V.    CONCLUSION

25        For the reasons discussed above, the Court **DENIES** Aiyedun's Motion for

26   Default Judgment.  (Dkt. No. 48.)  In light of Aiyedun's failure to state a well-pleaded

27   claim against RRS, the Court *sua sponte* **DISMISSES** the First Amended Complaint

28   **WITH LEAVE TO AMEND**.  As the First Amended Complaint is no longer operative,

1  the Court directs the Clerk to **SET ASIDE** the default entered against RRS as to the

2  First Amended Complaint.  (Dkt. No. 47.)

3         If Aiyedun elects to amend her pleading, she must do so no later than twenty-one

4  (21) days after the date of this Order.  Aiyedun must serve the amended complaint on

5  RRS within twenty-one (21) days of filing it with the Court and file a proof of service

6  with the Court immediately thereafter.  If Aiyedun fails to timely amend, this dismissal

7  will be deemed a dismissal with prejudice as of the lapse of the deadline to amend.

8

9         **IT IS SO ORDERED.**

10

11         November 17, 2025

12

13  _____

14                    **OTIS D. WRIGHT, II**
                **UNITED STATES DISTRICT JUDGE**

15